UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAKEIRA GITTENS, on behalf of herself, individually, and on behalf of all others similarly-situated, | Dkt. No. 2:17-cv-06378-SJF-AKT |
| Plaintiff, | |
| -against- | |
| 7-ELEVEN, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASSES, APPOINTMENT OF NAMED PLAINTIFF AS CLASS REPRESENTATIVE, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION <u>SETTLEMENT PROCEDURE</u>**

*Counsel for Plaintiffs and Putative Class*

**BORRELLI & ASSOCIATES, P.L.L.C.**

Michael R. Minkoff, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
655 Third Avenue, Suite 1821
New York, New York 10017

*Counsel for Defendant*:

**SEYFARTH SHAW LLP**

Howard M. Wexler, Esq.
620 Eighth Avenue
New York, New York 10018

Kevin M. Young, Esq.
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

I.      PRELIMINARY STATEMENT .............................................................................1

II.     BACKGROUND ......................................................................................................2

        A.      Procedural History, Plaintiffs' Allegations, and Subsequent Mediation .................2

        B.      Settlement Procedure ......................................................................................6

        C.      The Proposed Classes .....................................................................................7

        D.      Summary of the Monetary Settlement Terms .................................................7

III.    CLASS ACTION SETTLEMENT PROCEDURE ...............................................10

IV.     ANALYSIS .............................................................................................................12

        A.      The Court Should Grant Preliminary Approval of the Proposed Settlement .........12

                1.      The legal standards for preliminary approval .............................................12

                2.      The proposed settlement is fair, reasonable, and adequate
                        considering the complexity, expense, and likely duration of the
                        litigation, the stage of proceedings, and discovery completed .................16

                        a.      Complexity, expense, and likely duration of the litigation .............16

                        b.      Stage of proceedings and amount of discovery completed ............18

                3.      The proposed settlement is fair, reasonable, and adequate given the
                        risks of establishing liability and damages, and maintaining the class
                        through trial ................................................................................................19

                4.      Maintaining the FLSA collective and Rule 23 Class through trial
                        would not be guaranteed ............................................................................20

                5.      The Settlement Fund is substantial, even in light of the best possible
                        recovery and attendant risks of litigation, and the "reasonableness of
                        the proposed settlement" factors support approval of the proposed
                        settlement ...................................................................................................21

        B.      Certification Under Rule 23 is Warranted .........................................................22

                1.      Numerosity .................................................................................................23

2.      Commonality.............................................................................24

3.      Typicality .................................................................................24

4.      Adequacy of class representatives ...........................................25

5.      Rule 23(a)'s "implied" ascertainability requirement ...............26

6.      Certification under Rule 23(b)(3) has been met. ......................26

7.      Plaintiffs' counsel should be appointed as Class Counsel .......27

C.      The Proposed Notice is Appropriate....................................................28

V.      **CONCLUSION** .............................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                      **Page(s)**

*Alli v. Boston Mkt. Corp.*,
2012 WL 1356478 (D. Conn. Apr. 17, 2012) ........................................................... 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................. 23, 26

*Bravo v. Palm West Corp.*,
2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015) ......................................................... 13

*Capsolas v. Pasta Res. Inc.*,
2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ............................................................... 7

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199 (2d Cir. 2015) ..................................................................................... 12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................. *passim*

*Clark v. Ecolab*,
2010 WL 1948198 (S.D.N.Y. May 11, 2010) ............................................................ 7

*Clark v. Ecolab, Inc.*,
2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ..................................................... 13, 14

*Deen v. New Sch. Univ.*,
2008 WL 331366 (S.D.N.Y. Feb. 4, 2008) .............................................................. 24

*DeMunecas v. Bold Food, LLC*,
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................................................... 7

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ..................................................................................... 25

*Duchene v. Michael Cetta, Inc.*,
2009 WL 5841175 (S.D.N.Y. Sept. 10, 2009) ........................................................... 7

*Faican v. Rapid Park Holding Corp.*,
2010 WL 2679903 (E.D.N.Y. July 1, 2010) ............................................................... 7

*Flores v. Anjost Corp.*,
　2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ............................................................................ 8

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
　2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) ...................................................................... 8, 15

*Gay v. Tri-Wire Eng'g Solutions, Inc.*,
　2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) .............................................................................. 15

*Gen. Tel. Co. of Sw. v. Falcon*,
　457 U.S. 147, (1982) ............................................................................................................. 24

*Gilliam v. Addicts Rehab. Ctr. Fund*,
　2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .......................................................................... 8

*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000) .................................................................................................... 15

*Gortat v. Capala Bros., Inc.*,
　2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012) .......................................................................... 24

*Granada Invest., Inc. v. DWG Corp.*,
　962 F.2d 1203 (6th Cir. 1992) .............................................................................................. 20

*Green v. Wolf Corp.*,
　406 F.2d 291 (2d Cir. 1968) .................................................................................................. 27

*Hamelin v. Faxton–St. Luke's Healthcare*,
　274 F.R.D. 385 (N.D.N.Y. 2011) .......................................................................................... 26

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) .............................................................................................. 23

*In re Austrian & German Bank Holocaust Litig.*,
　80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 17, 18, 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
　55 F.3d 768 (3d Cir. 1995) .................................................................................................... 13

*In re RJR Nabisco Sec. Litig.*,
　1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ......................................................................... 20

*In re Traffic Exec. Ass'n*,
　627 F.2d 631 (2d Cir. 1980) .................................................................................................. 14

iv

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
718 F. Supp. 1099 (S.D.N.Y. 1989) ............................................................... 22

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001).......................................................................... 27

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)........................................................................... 18

*In re Warner Commun. Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)................................................................ 20

*Jolly Roger Offshore Fund Ltd. v. BKF Capital Grp., Inc.*,
2007 WL 2363610 (S.D.N.Y. Aug. 16, 2007)............................................ 26

*Khait v. Whirpool Corp.*,
2009 WL 6490085 (E.D.N.Y. Oct. 1, 2009)............................................... 24

*Landin v. UBS Servs. USA LLC*,
2012 WL 488284 (S.D.N.Y. Feb. 14, 2012)........................................... 13, 14

*Lizondro-Garcia v. Kefi, LLC*,
2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014) ................................................. 8

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)........................................................................... 25

*Massiah v. Metroplus Health Plan, Inc.*,
2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)............................................. 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2d Cir. 1995)........................................................................... 12

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ............................................. 8

*Navarro v. Bruckner Forever Young Social Adult Day Care Inc.*,
15-cv-0064-AJP, ECF # 133 (S.D.N.Y. July 15, 2016)............................. 7

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)........................................................................... 21

*Oppenlander v. Standard Oil Co.*,
64 F.R.D. 597 (D. Colo. 1974) ..................................................................... 20

v

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*,
    2010 WL 532960 (S.D.N.Y. Feb 9, 2009) ................................................................. 8

*Prasker v. Asia Five Eight LLC*,
    2010 WL 476009 (S.D.N.Y. Jan. 4, 2010) ................................................................. 7

*Priddy v. Edelman*,
    883 F.2d 438 (6th Cir. 1989) ................................................................. 20

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1970) ................................................................. 21

*Reyes v. Buddha-Bar NYC*,
    2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................................. 8, 16, 20

*Riedel v. Acqua Ancient Bath New York, LLC*,
    14-cv-7238-JCF, ECF # 71 (S.D.N.Y. Oct. 26, 2016 ................................................. 7

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................. 24, 25

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986) ................................................................. 26

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ................................................................. 24

*Silverstein v. AllianceBernstein, L.P.*,
    2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) ................................................................. 8

*Spicer v. Pier Sixty LLC*,
    2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ................................................................. 7

*Stefaniak v. HSBC Bank USA*,
    2008 WL 7630102 (W.D.N.Y. June 28, 2008) ................................................................. 8

*Stieberger v. Sullivan*,
    792 F. Supp. 1376 (S.D.N.Y. 1992) ................................................................. 17

*Stinson v. City of New York*,
    282 F.R.D. 360 (S.D.N.Y.2012) ................................................................. 26

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................. 20, 21

*Taylor v. Delta-Sonic Car Wash Sys., Inc.*,
  2017 WL 436045 (W.D.N.Y. Jan. 31, 2017) ........................................................... 23

*Trinidad v. Breakaway Courier Sys., Inc.*,
  2007 WL 103073 (S.D.N.Y. Jan. 12, 2007) ............................................................ 25

*Valerio v. RNC Indus., LLC*,
  314 F.R.D. 61 (E.D.N.Y. 2016) .............................................................................. 23

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*,
  2015 WL 4922961 (S.D.N.Y. Aug. 18, 2015) ................................................. 24, 26

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................................... 13, 14

*Westerfield v. Wash. Mut. Bank*,
  2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) .............................................................. 8

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .............................................................. 8

*Wolinsky v. Scholastic, Inc.*,
  900 F. Supp. 2d 332 (S.D.N.Y. 2012) ............................................................... 15, 16

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ........................................................ 8, 28

**Statutes**                                                                 **Page(s)**

29 U.S.C. § 216(b) ............................................................................... *passim*

NYLL § 195 ........................................................................................ *passim*

**Rules**                                                                    **Page(s)**

Fed. R. Civ. P. 23 ............................................................................... *passim*

**Treatises**                                                                 **Page(s)**

MANUAL FOR COMPLEX LITIG. (FOURTH) (2004)...................................................... 14

*Newberg on Class Actions* (4th Ed. 2002) ............................................................... 14

## I.     <u>PRELIMINARY STATEMENT</u>

Subject to this Court's approval, this wage and hour collective and class action brought pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") is settled for the maximum amount of $150,000.00. The proposed settlement resolves the claims of the Named Plaintiff, Shakeira Gittens ("Named Plaintiff"), the two Opt-In Plaintiffs, Daniella Adames and Lisanyela Gonzalez (the "Opt-in Plaintiffs," referred to together with Named Plaintiff as "Plaintiffs"), as well as the claims of those alleged by Plaintiffs to be similarly-situated putative class and collective members, against Defendant, 7-Eleven, Inc. ("7-Eleven" or "Defendant," and together with Plaintiffs, as the "Parties"). By this motion, including all supporting documents, the Parties respectfully submit that the proposed settlement satisfies all of the criteria for preliminary settlement approval and request that the Court:

(1)     preliminarily approve the proposed Settlement Agreement, annexed to the Declaration of Michael R. Minkoff, Esq. ("Minkoff Decl." or "Minkoff Declaration") as Exhibit A, the terms of which are described herein and in the Minkoff Declaration;

(2)     approve the proposed Notice of Proposed Class and Collective Action Settlement ("Notice"), attached to the Minkoff Declaration as Exhibit B, and approve the claims procedure detailed in the Settlement Agreement;

(3)     certify, for settlement purposes only, two overlapping settlement classes —one under Fed. R. Civ. P. 23(a) and (b)(3), and the other under 29 U.S.C. § 216(b) — with individual members jointly referred to as "Class Members," and defined as:

<u>Rule 23 Class</u>

All individuals who worked at least one day as an hourly employee in 7-Eleven Store No. 11159 (located at 80 Brooklyn Avenue, Freeport, NY 11520) and/or Store No. 24568 (located at 1571 Hempstead Turnpike, Elmont, NY 11003) (together, the "Relevant Stores") at any time from February 12, 2016 through January 12, 2017 (the "Relevant Time Period"), and who does not opt out of the Settlement; and

1

<u>FLSA § 216(b) Final Collective</u>

> All individuals who worked at least one day as an hourly employee in either of the Relevant Stores during the Relevant Time Period, and who negotiates his/her settlement check received as a result of this settlement, thereby opting in to the settlement of all FLSA claims;

(4)     appoint Named Plaintiff Shakeira Gittens as the Class Representative for both Classes;

(5)     appoint Borrelli & Associates, P.L.L.C., as Class Counsel;

(6)     appoint Arden Claims Service, LLC, as the Claims Administrator for this settlement;

(7)     approve the Parties' proposed schedule for the filing of a motion for final approval, for class members to opt out or file objections to the proposed settlement, and schedule a Fairness Hearing;

        and

(8)     enter the Proposed Order attached as Exhibit C to the Minkoff Declaration.

As discussed more fully below, because this settlement is fair, reasonable, and adequate, and otherwise satisfies, for the purposes of settlement only, the requirements of Fed. R. of Civ. P. 23(b)(3) and 29 U.S.C. § 216(b),[1] the Court should preliminarily approve it.

## II.     **BACKGROUND**

### A.     **Procedural History, Plaintiffs' Allegations, and Subsequent Mediation**

On November 1, 2017, Named Plaintiff filed a Complaint in this Court asserting FLSA and NYLL claims for unpaid overtime and other statutory damages, on behalf of herself and all those similarly-situated. Minkoff Decl. ¶ 2. On November 15, 2017, opt-in Plaintiff Gonzalez submitted

---

[1] If this settlement does not become final for any reason, Defendant reserves all objections it may to the certification of any class or collective under Rule 23 or 29 U.S.C. § 216(b). *See* Exhibit A, ¶ 3.10.

her Consent to Join form, thereby joining this action as a party plaintiff. *Id.* ¶ 3.  Shortly thereafter, on November 21, 2017, opt-in Plaintiff Adames did the same. *Id.* ¶ 4.

Plaintiffs all claim that they worked at different times in one of Defendant's corporate-owned and operated 7-Eleven convenience stores in Freeport, New York, Store Number 11159, as store clerks and/or assistant managers. *Id.* ¶ 5.  Plaintiffs allege that from on or around February 12, 2016 until January 12, 2017 (hereinafter, the "Relevant Time Period") and at the instruction of a Field Consultant, Defendant unilaterally altered Plaintiffs' time records, and the time records of other non-exempt employees at their store and at a second store under the Field Consultant's purview, Store No. 24568 in Elmont, New York, resulting in underpayment of wages. *Id.* ¶ 6. Plaintiffs claim that they regularly worked over forty hours per workweek, meaning that the alleged time shaving resulted in the failure to pay them overtime compensation. Am. Compl., ECF # 8, ¶ 11.  Additionally, Plaintiffs claim that Defendant failed to provide them with proper, accurate wage statements on each payday during the Relevant Time Period based on these missing hours and pay. *See generally* Compl.; Minkoff Decl., ¶ 7.

Defendant denies Plaintiffs' claims and core allegations in their entirety—both denying that any unlawful alterations had occurred at either store, and denying that the Field Consultant identified in the Complaint (or anyone at 7-Eleven) ever instructed or directed, whether explicitly or impliedly, any Store Manager or any other employee to remove hours worked from any non-exempt employee's time records or otherwise permitted or caused non-exempt employees to work "off the clock." Defendant maintains and continues to believe that if it litigated this case through summary judgment, it would secure a defense victory, inclusive of a finding that its Field Consultant did nothing to impinge upon the rights of Plaintiffs or any others under any applicable wage and hour laws. Likewise, Defendant denies that it failed to provide accurate wage statements

to Plaintiffs or any other employees they represent and denies, as a matter of law, that Plaintiffs' off-the-clock claims, if proven true, would necessitate the finding of a wage statement law violation.

Following Defendant's appearance, the Parties exchanged informal yet extensive discovery consisting of detailed time and payroll data for the entire putative class of approximately forty-one employees who worked for Defendant in both stores during the Relevant Time Period. Minkoff Decl. ¶ 8. Plaintiffs' counsel spoke with and met with all three Plaintiffs repeatedly and extensively to review and analyze the detailed data provided by Defendant and to assist with Plaintiffs' counsel preparation of a class-wide settlement demand. *Id.* ¶ 9. From this exchange of documents and information, Plaintiffs believed that the alleged time shaving was indeed widespread during the Relevant Time Period, and on that basis Plaintiffs prepared a detailed, day-by-day class-wide damages calculation. *Id.* ¶ 10.

Defendant vigorously disputed, and continues to dispute, the conclusions that Plaintiffs have drawn in this litigation. Defendant maintains that it correctly paid all of its employees at the stores in question, and that to the extent that there may have been any allegedly improper time alterations, they were carried out by a rogue manager at *one* store, who was quickly caught violating 7-Eleven's timekeeping policies—which require that non-exempt employees be paid for all hours worked and expressly forbid requiring, causing, or permitting a non-exempt employee to work "off the clock"—and was terminated in December 2016. *Id.* ¶ 11. Defendant also vociferously argued and maintains that many, if not all, of the alleged improper time record alterations could have plausibly been explained by employees' failure to clock out or clock in during their shifts, or similar instances that would in fact require modification of time entries in order to ensure accurate records of hours. *Id.* ¶ 12.

On April 13, 2018, the Parties reached an agreement in principle to resolve this case in advance of a scheduled settlement conference set to take place before Magistrate Judge Tomlinson. *See id.* ¶ 13.  The Parties only reached this agreement following frenetic negotiations by counsel, based upon meticulous analysis of the alleged day-by-day time records, and considering potential damages for allegedly owed straight-time wages, overtime compensation, and statutory damages under the NYLL's wage statement provisions for the entire class. *Id.* ¶ 14.  All three Plaintiffs provided invaluable insight to Plaintiffs' Counsel regarding the procedure by which the alleged clock edits were discovered, reported, and allegedly continued unpaid. *Id.* ¶ 15.

At the conclusion of the negotiations, which lasted for approximately ten weeks and included the exchange of several offers and demands, the Parties agreed to settle the alleged claims of the putative class, including the individual claims of the Named Plaintiff and Opt-in Plaintiffs, for the total amount of $150,000.00 (hereinafter "Settlement Sum"), inclusive of attorneys' fees, expenses, claims administrator fees, and service awards, but exclusive of the employer's share of any payroll taxes typically associated with wage payments reported on an IRS Form W-2. *See Id.* ¶ 16; *see generally* Ex. A,[2] Settlement Agreement.  Plaintiffs are satisfied that the portion of the Settlement Sum that will be distributed to Class Members after attorneys' fees, costs, Claims Administrator fees, and service awards represents approximately 180% of Defendant's potential liability for back wages, liquidated damages, and interest under Plaintiffs' absolute best-case scenario theory of the case and version of the facts, making the settlement highly favorable. Minkoff Decl. ¶ 17.  When accounting for potential NYLL wage statement penalties —which the Parties mutually acknowledge may not be available for many of the weeks at issue in the Relevant

---

[2] All citations to "Ex." refer to the exhibits attached to the Minkoff Declaration, dated June 1, 2018, and submitted contemporaneously with this Memorandum of Law.

Time Period —the Class Members' share of the Settlement Sum represents 33% of entire universe of recoverable damages, making the negotiated Settlement Amount more than reasonable. *Id.* ¶ 18.

### B.     Settlement Procedure

Following the Parties' agreement in principle, the Parties reduced the agreement to a comprehensive Settlement Agreement. *See* Minkoff Decl. ¶ 19; Ex. A.  The Parties also drafted a proposed Notice to be sent to Class Members, advising them of the settlement's material terms and their rights thereunder.  A true and accurate copy of the proposed Notice to be sent to Class Members is attached to the Minkoff Declaration as Exhibit B.  The Notice is fair and balanced and easy to understand, and includes all materially necessary information, including: information regarding the nature of the lawsuit; why there is a settlement and what a class and collective action is; a summary of the substance of the settlement, including the approximate share of the settlement that each class member can expect to receive; the procedure and time period for objecting to the settlement, excluding oneself from the settlement, or participating in the settlement; and information regarding the Fairness Hearing and opt-out procedure.  The Notice also discusses the release, the requested attorneys' fees and service awards, the Claims Administrator, and the method for distributing any uncashed checks. *See id.* ¶ 21.

Within seven (7) days of the Court's entry of an Order granting the instant motion (the "Implementing Order"), Defense Counsel will provide a Class Member List to Plaintiffs' Counsel and to the Administrator in electronic form.  The Administrator will have fourteen (14) days after the entry of the Implementing Order by the Court to mail, via First Class United States Mail, the Court-approved Notices of Proposed Settlement to all Class Members.  Class Members will then have forty-five (45) days from the date that the Notices are initially mailed to object or opt-out of the settlement.  To be effective, an Opt-out Statement must be postmarked or received by the Administrator within forty-five (45) days after the initial mailing of Notice to the Class.  The

Notice also contains instructions and a deadline for Class Members who wish to object to the Settlement Agreement and/or appear at the Fairness Hearing, either with or without counsel. Minkoff Decl. ¶¶ 24; *id.* Exhibit B.

### C.   The Proposed Classes

The Parties agree that the proposed overlapping classes consist of approximately forty-one current and former hourly, non-exempt store clerks and/or assistant managers, or other employees with different job titles but who performed substantially similar job duties as store clerks, including Plaintiffs, who worked for Defendant for at least one day between February 12, 2016 and January 12, 2017 in either Store No. 11159 or Store No. 24568. Minkoff Decl. ¶¶ 23-24.

### D.   Summary of the Monetary Settlement Terms

As previously stated, the Settlement Agreement creates a fund of $150,000.00 (the "Settlement Fund" or "Settlement Amount"). The Settlement Fund will be funded by Defendant within thirty (30) days of the Court's Implementing Order, *i.e.*, the order granting this motion. Attorneys' fees are to be paid from the Settlement Fund in the amount, subject to court approval, of one-third of the Settlement Amount,[3] plus Plaintiffs' Counsel's out-of-pocket expenses spent

---

[3] Although Plaintiffs' Counsel's fee application is not presently before the Court, Plaintiffs note that 33% of a total settlement fund is the customary fee award in wage and hour cases in this Circuit for comparable settlements in terms of size and complexity. *See, e.g.*, *Riedel v. Acqua Ancien Bath New York, LLC*, 14-cv-7238-JCF, ECF # 71 (S.D.N.Y. Oct. 26, 2016) (awarding a $161,666.67 fee in $485,000.00 class settlement); *Navarro v. Bruckner Forever Young Social Adult Day Care Inc.*, 15-cv-0064-AJP, ECF # 133 (S.D.N.Y. July 15, 2016) (awarding a $159,333.33 fee in $475,000.00 class settlement); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) (awarding 33.33% fee in $5.25 million settlement); *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (awarding 33% fee in $8.5 million settlement); *Alli v. Boston Mkt. Corp.*, 2012 WL 1356478 (D. Conn. Apr. 17, 2012) (awarding 33.33% fee in $3 million settlement); *DeMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010) (awarding 33% fee in $729,000.00 settlement); *Clark v. Ecolab*, 2010 WL 1948198, at *8 (S.D.N.Y. May 11, 2010) (awarding one-third fee in $6 million settlement); *Faican v. Rapid Park Holding Corp.*, 2010 WL 2679903, at *2 (E.D.N.Y. July 1, 2010) (awarding 33.3% fee in $522,000.00 settlement); *McMahon v. Olivier Cheng Catering and Events,* 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010) (awarding 33% fee in $400,000.00 settlement); *Prasker v. Asia Five Eight LLC*, 2010 WL 476009, at *6-7 (S.D.N.Y. Jan. 4, 2010) (awarding 33% of $1.05 million settlement); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (awarding 32.2% fee in $3.15 million settlement);

prosecuting and settling this case. Minkoff Decl., ¶ 25.  Additionally, Service Awards of $5,000.00 each, subject to Court approval, totaling $15,000.00, will be paid to Named Plaintiff Gittens and the two Opt-In Plaintiffs, Adamaes and Gonzalez, based on the services they provided to the Class and Collective in assisting Plaintiffs' counsel in prosecuting this action.[4]  These service awards will be deducted from the Settlement Sum. *Id*., ¶ 26. Finally, as payment for all of its fees, costs, and expenses for its handling of all duties related to administration of the Settlement, including the distribution of checks and tax reporting, the Claims Administrator will be paid using uncashed funds in the anticipated amount of $4,000.00. *Id*., ¶ 27.  In the event that uncashed funds are insufficient to cover payments due to the Claims Administrator, the balance will be deducted from Class Counsel's above-mentioned award of fees. *Id*.

---

*Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (awarding 33% fee in $710,000.00 settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% fee in $3.265 million settlement); *Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010 WL 532960, at *2 (S.D.N.Y. Feb 9, 2009) (awarding 33.3% fee in $745,000.00 settlement); *Stefaniak v. HSBC Bank USA*, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% fee of $2.9 million settlement); *Westerfield v. Wash. Mut. Bank*, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million settlement); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (awarding one-third fee in $450,000.00 settlement).

[4] While the service awards are also not presently before the Court, the total service awards here represent 1% of the Settlement Fund.  Courts within the Second Circuit routinely grant service awards of up to 9.1% of the total settlement amount, in comparable wage-and-hour Rule 23 settlements. *See, e.g.*, *Lizondro-Garcia v. Kefi, LLC*, 2014 WL 4996248, at *9-10 (S.D.N.Y. Oct. 7, 2014) (collecting cases approving service awards up to 9.1% of total settlement amounts in FLSA/NYLL context). The total amount of each service award is also reasonable. *See, e.g.*, *Silverstein v. AllianceBernstein, L.P.*, 2013 WL 7122612, at *10 (S.D.N.Y. Dec. 20, 2013) (granting a service award of $25,000.00 to each of two named plaintiffs and a service award of $1,500.00 to each opt-in plaintiff); *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000.00, $15,000.00, and $7,500.00); *see also Flores v. Anjost Corp.*, 2014 WL 321831, at *10 (S.D.N.Y. Jan. 29, 2014) (quoting *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013)) (collecting cases, and noting "Service awards are common in class action cases and serve to 'compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s].'").

To determine each Class Member's share of the Settlement Fund, Class Members will receive one point for each day worked as a non-exempt employee at either relevant store during the Relevant Time Period. *Id.* ¶ 28.  The Settlement Fund, after deductions for court-approved attorneys' fees, Service Awards, and other court-approved fees, expenses, and disbursements contemplated by the Parties in the Agreement, will be divided by the aggregate number of points accrued by all Class Members (inclusive of any points that would have been attributable to any individuals who opts out of the settlement had they remained Class Members) ("Point Value"). Each individual's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount." *Id.* ¶ 29.  Each Class Member that does not opt-out of the Class will be mailed his/her Individual Settlement Amount without having to submit any claim forms or take any other affirmative action.[5] *Id.* ¶ 30.  The monetary terms of the settlement, including the tax treatment of each payment, are laid out in the Settlement Agreement. *See id.* ¶¶ 23-37; *id.* Ex. A.

Once all of the Claims Administrator's fees are paid, and once all other monies are distributed to the participating Class Members and Class Counsel, any remaining uncashed funds will revert to Defendant. *Id*. ¶¶ 32.

Class Members who do not opt-out will release any NYLL claims against Defendant. *Id.* ¶ 33.  If a Class Member negotiates his or her check, thereby opting in to the settlement, that Class Member will become a Collective Member and release all FLSA claims against Defendant as well. Each Class and Collective Member's check will contain the following statement:

---

[5] Class Members will have 180 days from the date of mailing to negotiate their checks.  For all uncashed checks after the 180-day period, any uncashed funds will revert to the Defendant. Minkoff Decl. ¶¶ 32.

CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:

> By endorsing this check, I consent to join the FLSA collective action titled *Gittens v. 7-Eleven, Inc.*, Case No. 17-cv-6378-SJF-AKT, and release the defendant in that action, 7-Eleven, Inc. (including its related or affiliated companies, officers, directors, employees, managers, agents, etc., for acts taken in their capacities as employees or representatives of 7-Eleven), from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law, and any other applicable wage and hour law, rule, or regulation that were brought (or could have been brought) in the action, including but not limited to claims concerning overtime pay, minimum wage, "off-the-clock" work, meal periods, rest breaks, wage statements, or wage notices, pertaining to any portion of my employment from January 1, 2016 through [DATE OF IMPLEMENTING ORDER] and also encompassing June 26, 2015 through January 1, 2016 with respect to any work performed as an employee at Store No. 11159 (80 Brooklyn Ave., Freeport, NY) and/or Store No. 24568 (1571 Hempstead Turnpike, Elmont, NY). The foregoing language may not be modified or amended, and will be deemed accepted as originally printed upon cashing/deposit of the Settlement Check.

*Id.* ¶ 34.  If any Class Member who does not opt-out receives a check but nevertheless fails to negotiate it within four months of receipt, such Class Members will release their NYLL claims but will retain their rights under the FLSA. *Id.* ¶ 36.

As discussed more fully below, all Parties believe that the settlement offers a fair and reasonable resolution of the claims at issue.  Further, all Parties believe that the settlement incorporates and recognizes the substantial risks that each side faces, whether through class certification and decertification motions, summary judgment motions, at trial, and on appeal, had the litigation continued. *Id.* ¶ 37.  Accordingly, the Parties jointly ask that the Court preliminarily approve their settlement and grant all other relief requested herein.

## III.   CLASS ACTION SETTLEMENT PROCEDURE

Consistent with Federal Rule of Civil Procedure 23(e), the Parties have agreed to the following procedure for settlement approval of the class action claims:

(1)     Preliminary approval of the proposed settlement after submission to the Court of the instant Notice of Motion for Preliminary Approval of Settlement, Appointment

of Named Plaintiff as Class Representative, Certification of Settlement Classes, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notice of Settlement and Class Action Settlement Procedure;

(2)     Within fourteen (14) days of the entry of the Implementing Order by the Court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court-approved Notices of Proposed Settlement;

(3)     Class Members will have forty-five (45) days after the date the Notice of Settlement is mailed to object to the proposed settlement or to opt-out;

(4)     The Parties will file a Motion for Final Approval of Settlement after the expiration of the opt-out period, by a date fixed by the Court;

(5)     A final settlement approval hearing, at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented, will be scheduled on a date that is convenient to the Court;

(6)     The Final Effective Date shall be five (5) days after the Court has entered a Final Order approving this Agreement, provided the time to appeal from the Final Order has expired and no notice of appeal has been filed.  In the event a notice of appeal is filed, the Final Effective Date shall be the latest date upon which each of the following has occurred: (a) any appeal from the Final Order has been finally dismissed (or the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court); and (b) any time to petition for review with respect to that appellate decision has expired (or, if a petition for review is filed, the petition has been denied or

dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court).

(7)     The Claims Administrator shall, within ten (10) days after the Final Effective Date has passed, send the Settlement Checks comprising of the Plaintiffs' Individual Settlement Amounts, Plaintiffs' Counsel's approved professional fees and expenses, and any Service Awards for Plaintiffs to the Class Members, Collective Members, Service Award recipients and Plaintiffs' Counsel.

(8)     Class Members will have one-hundred eighty (180) days from the date that the checks are mailed to cash their checks.  After the expiration of that period, to the extent that any funds remain in the Settlement Fund, the Administrator will use the uncashed funds to collect their claims administration fees, or return the uncashed funds to the Defendant.

## IV.    ANALYSIS

### A.    The Court Should Grant Preliminary Approval of the Proposed Settlement

#### 1.     *The legal standards for preliminary approval*

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis. *See* Fed. R. Civ. P. 23(e).  More specifically, the Court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Likewise, the Second Circuit has held that settling an FLSA claim with prejudice requires approval of a court or the U.S. Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  The decision whether to approve a class settlement is left to the district court's sound discretion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

As a general matter, settlement of class action lawsuits is strongly favored. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy

in favor of settlements, particularly in the class action context") (internal quotation marks and alterations omitted); *Landin v. UBS Servs. USA LLC*, 2012 WL 488284, at *1 (S.D.N.Y. Feb. 14, 2012) (granting preliminary approval of FLSA settlement and noting the "strong judicial policy in favor of settlement of class action suits") (internal quotation marks and alterations omitted). "Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing." *Bravo v. Palm West Corp.*, 2015 WL 5826715, at *2 (S.D.N.Y. Sept. 30, 2015) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995)) (noting practical purposes of provisionally certifying settlement class).

Further, "courts should give proper deference to the private consensual decision of the parties" bearing in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks omitted). Such deference to a privately-negotiated settlement is particularly appropriate when the settlement is the product of arms-length negotiations between the parties. *See Wal-Mart Stores*, 396 F.3d at 116 (discussing "strong judicial policy" in favor of settlements).

Rule 23(e) establishes a "two-step process" for approval of settlements. First, the Court must determine whether the proposed class action settlement deserves preliminary approval. Then, following preliminary approval and notice to the class, the Court must determine whether final approval is appropriate. At the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must

direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14, at 172-173 (2004). A proposed settlement agreement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations and is sufficiently fair, reasonable, and adequate to justify the sending of the Notices and setting the date for a fairness hearing." *Landin*, 2012 WL 488284, at *1.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42 (1995)); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg on Class Actions* § 11.25 (4th Ed. 2002)).  To grant preliminary approval, the court need only find "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg on Class Actions* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice to be sent to class members).

In determining whether a settlement is fair, reasonable, and adequate, courts in this Circuit typically look to the nine "*Grinnell* factors," which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated*

*Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In assessing FLSA settlements for approval, courts have considered factors similar to those

employed in the Rule 23 context, namely whether the settlement resulted from contested litigation

and whether the result represents a fair and adequate resolution of those contested issues. *See Gay*

*v. Tri-Wire Eng'g Solutions, Inc.*, 2014 WL 28640, at *10 (E.D.N.Y. Jan. 2, 2014) (quoting *Khatit*

*v. Whirlpool Corp.*, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)) ("The standard for

approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not

implicate the same due process concerns . . . [c]ourts approve FLSA settlements when they are

reached as a 'result of contested litigation to resolve *bona fide* disputes' and when the 'proposed

settlement reflects a reasonable compromise over contested issues . . . "); *Massiah v. Metroplus*

*Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) ("Typically, courts regard

the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the

settlement."); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 WL 5305694, at *6

(E.D.N.Y. Oct. 4, 2012) ("Because the Settlement Agreement resolves a clear and actual dispute

waged in contested litigation and resolved through arm's-length settlement negotiations, it should

be approved.").

More recently, in evaluating a proposed settlement of FLSA claims, courts in this district

have applied the a-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335

(S.D.N.Y. 2012). The *Wolinsky* factors examine: (1) the plaintiff's range of possible recovery; (2)

the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses

in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Because the *Grinnell* factors subsume the *Wolinsky* factors, this motion only discusses *Grinnell*.

For reasons detailed below, Plaintiffs maintain, and under these circumstances Defendant does not contest, that the *Grinnell* factors applicable at this preliminary approval stage, which include the factors used to assess FLSA settlements, weigh in favor of the proposed settlement.[6]

> **2.**      ***The proposed settlement is fair, reasonable, and adequate considering the complexity, expense, and likely duration of the litigation, the stage of proceedings, and discovery completed***

> **a.**      *Complexity, expense, and likely duration of the litigation*

While Defendant has and continues to oppose the legal and factual issues in this case, the size of the potential class, combined with the time and burden associated with fully developing its defenses to the extent required to secure summary judgment, warranted considering the prospects of an early settlement in this matter.  By reaching a mutually agreeable resolution before engaging in full-blown discovery, dispositive motions, or trial, Plaintiffs and Defendant alike seek to avoid any additional expense and delay, and, for Plaintiffs, to instead ensure recovery for the Class. *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and noting that "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").  Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001).  Settling this dispute will enable the Parties to

---

[6] Some factors, such as the reaction of the class to the settlement, are not applicable at this stage of the Court's analysis.

focus their resources and energies on other pursuits, rather than on prolonged, expensive, and risk-laden litigation. *See Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992), *rep. & rec. modified at* 801 F.Supp. 1079 (S.D.N.Y. 1992) (approving settlement, noting that the "compromises represented therein constitute a reasonable balance, especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member").

Indeed, the Parties' recognized at an early stage in this action that the need to expend substantial time and expense litigating would cause significant expense likely disproportionate to the potential recovery (or, for Defendant, defense costs). Barring a settlement, the Parties expected to take a dozen or more depositions, undertake an individualized analysis of extensive timekeeping and payroll data, and engage in robust motion practice concerning, *e.g.*: the suitability of collective action treatment (likely on both a motion for conditional certification and, if such certification were granted, a decertification motion); the appropriateness of class action treatment (likely on both a motion for class certification and, if need be, a motion for decertification and/or an interlocutory appeal); and the merits of Plaintiffs' claims and Defendant's denials and defenses. If Defendant failed to secure summary judgment, then a lengthy and potentially complicated trial would be necessary, featuring extensive testimony by Defendant's representatives, Plaintiffs, and, if the case were certified as a class or collective action, potentially dozens of current and former employees. Preparing and presenting testimonial and documentary evidence regarding the many contested factual and legal issues would consume tremendous time and resources, both for the Parties and for the Court, particularly when compared to the finite universe of potential damages. Even if Plaintiffs prevailed at trial and on appeal—which Defendant denies they could—it could take years for Class Members to recover a

17

monetary judgment.  The Parties' settlement, on the other hand, makes monetary relief available promptly and efficiently.  Thus, the first *Grinnell* factor weighs in favor of preliminary approval.

        b.    <u>Stage of proceedings and amount of discovery completed</u>

Although preparing this case for trial would require many hundreds of additional hours of work for both sides, the Parties have already undertaken extensive discovery to date even in the absence of formal discovery, and counsel is able to recommend settlement at this juncture. Minkoff Decl. ¶¶ 8-12, 41.  In evaluating the settlement's fairness at this stage, the proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal quotation marks omitted).  Here, the extensive information produced and discovery exchanged was part of "an aggressive effort" to learn the relevant facts and circumstances in an efficient and cost-effective manner, and exceeds the required standard.

Indeed, as described above, the Parties have already exchanged extensive timekeeping and payroll data comprising thousands of rows of data in Microsoft Excel spreadsheets. Minkoff Decl. ¶¶ 8-12.  The three Plaintiffs were intimately involved in this matter, with Named Plaintiff Gittens assisting with the pre-litigation investigation and complaint-drafting while also helping to encourage the other Opt-In Plaintiffs to join the case. *Id.* ¶¶ 9, 15.  All three Plaintiffs met with Plaintiffs' Counsel, and actively participated in discovery and the negotiations leading up to the settlement. *Id.*  The Parties, through counsel, thoroughly and meticulously analyzed day-by-day time records for each Class Member, leading to the creation of competing classwide damages

calculations, and weeks'-long discussions between counsel of potential damages as part of settlement negotiations.

> **3.** ***The proposed settlement is fair, reasonable, and adequate given the risks of establishing liability and damages, and maintaining <u>the class through trial</u>***

To continue this matter through the end of a trial would expose both sides to risk, including the risk that: Defendant might (or might not) secure summary judgment on some or all of Plaintiffs' claims; the risk that Plaintiffs might (or might not) obtain certification of a collective and/or class action (and the risk that any such class or collective might or might not be decertified before trial); and the risk that legal fees might eclipse, for Defendant, the cost of settlement, or, for Plaintiff, a 100% successful prosecution of the classwide claims.

Although Plaintiffs' Counsel believes Plaintiffs' case is strong, it recognizes considerable risk as to the amount of damages.  Defendant, by contrast, categorically denies Plaintiffs' claims and core allegations and has remained confident that it would prevail on, *inter alia*, whether any edits to Plaintiffs' time records were made that were in fact improper, whether Plaintiffs were paid for all hours worked, and whether Plaintiffs received accurate wage statements and notices.  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (quotation marks omitted).  Plaintiffs' Counsel is experienced and realistic, and understands that the resolution of these issues, and the outcome of trial (if any) and any appeal, are inherently uncertain.  The proposed settlement alleviates this uncertainty.  This factor weighs heavily in favor of preliminary approval.

Indeed, even leaving aside the contested liability here, any damages would be hotly disputed and could be the subject of "dispute between [the] experts [retained by the parties], a dispute whose

outcome is impossible for [the Court] to predict." *In re RJR Nabisco Sec. Litig.*, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992); *see also In re Warner Commun. Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages. . . . In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited . . . .") (citations omitted). This uncertainty could result in little or no recovery for Class Members after trial. But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)). The proposed settlement is substantial and "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003); *see also Reyes*, 2009 WL 5841177, at *3. Under these circumstances, it is proper for the Parties "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974).

### 4. *Maintaining the FLSA collective and Rule 23 Class through trial would not be guaranteed*

In the event this case is not settled, Plaintiffs would still have to move for conditional certification under the FLSA and class certification pursuant to Rule 23. Defendant would likely contest both motions. Even if the motions were granted, after months of discovery Defendant would move for decertification of any class or collective, necessitating additional rounds of extensive briefing. Defendant could also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f) if Plaintiffs were to prevail. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

> **5.      The Settlement Fund is substantial, even in light of the best possible recovery and attendant risks of litigation, and the "reasonableness of the proposed settlement" factors support <u>approval of the proposed settlement</u>**

Plaintiffs' Counsel has determined that this case, from a collective standpoint, presents serious risks that militate toward substantial compromise now.   After weeks of negotiations between counsel, Defendant has agreed to settle the case for a maximum of $150,000.00.  The documents and information exchanged revealed that the bulk of the class claims consisted of time that could have plausibly been explained by a failure to "clock out" at the end of a shift, or similarly benign issues, which would make obtaining and maintaining a class difficult given the possibility of individualized issues predominating over common issues.  Further, Defendant's investigation into allegations of improper "time shaving" took place well before this lawsuit was filed and was concluded with diligent measures taken by Defendant to ensure "time shaving" such as Plaintiffs alleged would not occur in the future.  This ensured that any alleged damages ceased prior to Plaintiffs' filing of the Complaint, and it mitigated any allegation that an award of liquidated damages could be justified in the event that the litigation progressed beyond this settlement.

Moreover, "[t]he determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo*, 258 F. Supp. 2d at 260.  Rather, "there is a range of reasonableness with respect to a settlement . . ." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Thus, "[i]n evaluating the proposed settlement, the court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1970).  Instead, "[d]ollar amounts are judged . . . in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); *see also Grinnell*, 495 F.2d at 468

(citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)) ("The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice.").

Here, for reasons described above, this settlement is reasonable.  Defendant produced the time records for the entire Class for the entire Relevant Time Period.  Based on Plaintiffs' Counsel's day-by-day and line-by-line analysis of the time records, Plaintiffs' Counsel contends that these records revealed a maximum potential unpaid wage recovery of up to $47,967.83 based on approximately 1,300 total allegedly "unpaid" hours.   In addition, these records revealed an additional potential recovery of $177,770.00 under NYLL § 195(3)'s wage statement provision *if* each and every allegedly altered time record occurred on different weeks, and if indeed each alteration produced an inaccurate paystub. Minkoff Decl. ¶¶ 16-18.

While estimated classwide damages—inclusive of liquidated damages, interest, and the universe of NYLL § 195(3) damages—represented a total of $244,223.69, Plaintiffs recognize the possibility that Defendant may have defeated their claims outright. Moreover, had Defendant established that some or all of the alleged time modifications were proper, any or all damages could be reduced to zero.  Likewise, if the evidence demonstrated alterations were carried out by a single rogue manager at a single store who was swiftly terminated for such potential misfeasance, liquidated damages could have been wiped away, cutting recovery in half.  Thus, a realistic range of recovery spanned from $0 to an estimated $244,223.69.   As a result of highly adversarial negotiations by experienced counsel, and after the exchange and analysis of voluminous documents and ESI, Defendant will pay a maximum of $150,000.00, of which Class Members will receive an estimated $80,200.00.  This represents a favorable outcome for all Parties in light of the range of possible outcomes.

### B.   Certification Under Rule 23 is Warranted

Further, for purposes of settlement only, the Parties agree that this class meets all of the

requirements for Rule 23 class certification.[7] *See* Newburg, § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").  Both the Supreme Court and various Circuit Courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 591 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1011 (9th Cir. 1998).  Here, for settlement purposes only, the parties submit that the elements of Rule 23 are met with respect to the proposed settlement, which accordingly warrants settlement class certification.[8]

For a lawsuit to be maintained as a class action under Federal Rule of Civil Procedure 23, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  As discussed below, all such factors are satisfied for settlement purposes.

### *1.* *Numerosity*

The numerosity requirement is met when the class is "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  In this Circuit, "no magic minimum number

---

[7] Again, Defendant reserves its right to contest class certification if this settlement fails for any reason.

[8] Because § 216(b)'s "similarly situated" requirement is "considerably less stringent" than Rule 23's class certification requirements, if a class meets the requirements of Rule 23, then, as a general matter, it should also meet the requirements for certification under § 216(b). *See, e.g., Taylor v. Delta-Sonic Car Wash Sys., Inc.*, 2017 WL 436045, at *4 (W.D.N.Y. Jan. 31, 2017) (approving Rule 23 Class and FLSA Collectives for "substantially the same reasons"); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (contrasting, in general, requirements for FLSA certification and Rule 23 certification).

establishes numerosity." *Deen v. New Sch. Univ.*, 2008 WL 331366, at *2 (S.D.N.Y. Feb. 4, 2008) (quotation omitted).  In determining numerosity, "the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members." *Gortat v. Capala Bros., Inc.*, 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  However, numerosity is presumed where a class has forty or more members. *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc.*, 2015 WL 4922961 (S.D.N.Y. Aug. 18, 2015) (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011)).  Here, numerosity is satisfied as the class is comprised of approximately forty-one individuals.

### 2.   *Commonality*

Plaintiffs also maintain, and Defendant does not contest, that the proposed class satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  This case involves common issues of fact and law involving alleged unpaid overtime wages arising from non-exempt employees at two stores during a defined period of time not being paid all of their overtime wages due to alleged "time shaving."  For settlement purposes in this case, this is sufficient to establish commonality under Rule 23. *See Khait v. Whirpool Corp.*, 2009 WL 6490085, at *2 (E.D.N.Y. Oct. 1, 2009) (commonality requirement satisfied where common issues include employer's classification of employees).

### 3.   *Typicality*

Plaintiffs also maintain, and Defendant does not contest, that typicality is met for purposes

of the proposed settlement.  As a general matter, typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citation omitted).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.  Here, the claims of Plaintiffs and the Class Members arise from the same alleged "time shaving" practice—albeit a practice that Defendant vehemently denies—at two stores between February 12, 2016 and January 12, 2017.  The typicality requirement is met for settlement purposes. *See Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (typicality is evaluated "with reference to the company's actions, not with respect to the particularized defenses it may have.").

### 4.       *Adequacy of class representatives*

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class."  Adequacy requires that "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).  Here, as detailed herein, Named Plaintiff has vigorously pursued the interests of the Class, and for purposes of settlement, the interests of Named Plaintiff and the Class are aligned.  Accordingly, for purposes of settlement, Plaintiffs maintain and Defendant does not contest that Named Plaintiff is an adequate class representative. *See Jolly Roger Offshore Fund Ltd. v. BKF Capital Grp., Inc.*, 2007 WL 2363610, at *5 (S.D.N.Y. Aug. 16, 2007) ("Plaintiff has alleged a financial injury, has filed both a complaint and a motion to be appointed lead plaintiff, and has retained competent counsel, thereby demonstrating its interest in the outcome of the litigation.").

### 5.      *Rule 23(a)'s "implied" ascertainability requirement*

Additionally, although not expressly stated in Rule 23(a), "courts have added an implied requirement of ascertainability with respect to the class definition." *Vivaldo*, 2015 WL 4922961, at *5 (citing *Hamelin v. Faxton–St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011). Courts require that "a class be identifiable before it may be properly certified." *Hamelin*, 274 F.R.D. at 396 (citing *Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y.2012) (citation omitted).  Here, the class is easily identifiable, as Defendant has produced a list with the approximately forty-one employees who worked for it at the two identified Long Island 7-Eleven convenience stores during the Relevant Time Period.  Thus, this requirement has been met.

### 6.      *Certification under Rule 23(b)(3) has been met.*

The two requirements of Rule 23(b)(3), namely superiority and predominance, are also met for settlement purposes.  Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members and that a class action is a superior to other available methods for the fair and efficient adjudication of the controversy."  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc*., 798 F.2d 590, 598 (2d Cir. 1986).

Here, Plaintiffs maintain and Defendant does not contest that common questions predominate because "the issues in the class action . . . are subject to generalized proof, and thus applicable to the class as a whole." *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 138 (2d Cir. 2001).  Indeed, all Class Members are unified by the allegation that they were

employed in the same job classification, same two stores, and same finite time period and that they allegedly were not paid for all hours worked and provided accurate wage statements.  As a result, predominance is satisfied.

Further, class certification is a superior method to resolve this action compared to individual actions. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  No individual Class Member has brought or reasonably will bring an individual action given the small potential individual recovery for each person, and there is a strong desirability to efficiently concentrate the claims in this single forum. *See* Fed. R. Civ. P. 23(b)(3).  Accordingly, under these circumstances, the requirements of Rule 23(b)(3) are met because a class action is superior to other available methods for adjudication.

### 7.  *Plaintiffs' counsel should be appointed as Class Counsel*

Borrelli & Associates, P.L.L.C. should be named as class counsel.  Rule 23(g) sets forth the factors that the court should consider in making this determination: (1) the work counsel has done in identifying or investigating potential class claims; (2) counsel's experience in handling class actions of the type asserted; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to represent the class.  This Court is familiar with Plaintiffs' Counsel's work in this case and others.  As detailed herein, Plaintiffs' Counsel investigated this matter prior to commencing this action; prepared and filed the Complaint; met and spoke with Plaintiffs regularly regarding their claims and allegations; analyzed voluminous time and payroll data for the Plaintiffs and class; created detailed, day-by-day damages calculations for all class members; negotiated a settlement with Defendant's counsel; and prepared the instant motion and supporting documents.

Furthermore, Plaintiffs' Counsel is experienced in class action litigation, and thus adequate to represent the class here. *See* Minkoff Decl. ¶¶ 38-39 (citing several recent cases where Borrelli

& Associates, P.L.L.C. has been appointed as class counsel).  Accordingly, Plaintiffs' Counsel's professional experience and time spent on this matter qualifies them to represent the class. *See Yuzary*, 2013 WL 5492998, at *3 (deeming lawyers adequate to litigate case because they have "substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law.").

     **C.**     **The Proposed Notice is Appropriate**

The content of the Proposed Notice, attached as Exhibit B to Minkoff Declaration, fully complies with all requirements under Rule 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must be concise and in plain language, and set forth the claims, terms of settlement, method to object or be excluded, and the binding effect of the settlement.  The proposed Notice here meets these requirements by providing specific and clear information to the Class, in plain language that is easy to understand, and sets forth the terms therein.  The proposed Notice also clearly informs Class Members how to object or opt-out, and adequately informs Class Members of the effects of the settlement, whether they choose to do nothing and participate by default, opt-out, or object.  The Notice will be distributed consistent with the requirements of fairness and due process by sending the same to the Class Members via first class mail.  The Claims Administrator will also perform a skip trace to identify any updated or alternative addresses for notices returned as undeliverable, furthering the reasonableness of disseminating notice here.  Class Members will have a period of forty-five days to decide whether to participate in the settlement by doing nothing, object, or opt-out.  As a result, because this Notice and the proposed methods of distribution fully complies with the requirements under Rule 23, the Court should approve it accordingly.

Finally, the Parties have selected Arden Claims Service, LLC to serve as the Claims

Administrator in this action—an experience class action settlement administrator that has handled dozens of class action settlements around the United States. *See* Minkoff Decl. ¶ 21.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Parties jointly and respectfully request that the Court: (1) grant preliminary approval of the settlement described herein and the Settlement Agreement; (2) approve the proposed Notice attached to the Minkoff Declaration as Exhibit B, and approve the claims procedure detailed herein and in the Settlement Agreement; (3) certify the two overlapping settlement classes under Fed. R. Civ. P. 23(a) and (b)(3) and FLSA § 216(b) for purposes of effectuating the settlement; (4) appoint Named Plaintiff Shakeira Gittens as the Class Representative for both Classes; (5) appoint Borrelli & Associates, P.L.L.C. as class counsel; (6) appoint Arden Claims Service, LLC, as Settlement Claims Administrator; (7) approve the Parties' proposed schedule for final settlement approval and schedule a fairness hearing; and (8) enter the Proposed Order attached to the Minkoff Declaration as Exhibit C.

Respectfully submitted this 3rd day of July, 2018.

Michael R. Minkoff, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
**BORRELLI & ASSOCIATES, P.L.L.C.**
655 Third Avenue, Suite 1821
New York, New York 10017

*Counsel for Plaintiffs and Putative Class*

Howard M. Wexler, Esq.
**SEYFARTH SHAW LLP**
620 Eighth Avenue
New York, New York 10018

Kevin M. Young, Esq.
**SEYFARTH SHAW LLP**
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309

*Counsel for Defendant*